UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------------------- x
PETER MCKEEVER,                      :
                                          Civil Action No.: 10-CV-40232
                    Plaintiff,       :
         vs.                                 :
                                     :
EMC CORPORATION,                     :
                                     :
                    Defendant.
------------------------------------------------- x
```

## **COMPLAINT FOR DECLARATORY RELIEF**

The plaintiff, Peter McKeever ("Plaintiff" or "McKeever"), by his undersigned

counsel, brings this action against the defendant, EMC Corporation ("EMC"), for declaratory

relief, and for his Complaint alleges, upon knowledge with respect to himself and his own acts,

and upon information and belief with respect to all other matters, as follows:

### **NATURE OF THE ACTION**

1.     EMC is a global giant in business and technology consulting.  McKeever

worked for EMC before resigning in October 2009.  In November 2010, after his 12-month non-

competition agreement with EMC expired, McKeever joined a recently-formed and, by contrast

to EMC, smaller competitor, Knowledgent Group, Inc. ("Knowledgent").

2.     Upon information and belief, EMC, through the acts described herein and

those to be discovered, has made and continues to make a concerted and intentional effort to

require Knowledgent and its employees to expend a substantial amount of their limited resources

defending against and pursuing various litigations in an effort to drive Knowledgent from its

space in the marketplace.

3.     Additionally, EMC, in its zeal to punish Knowledgent at any cost, has made threats and used coercion against McKeever to interfere with his desire to earn a living and work for Knowledgent.

4.     These wrongful acts include:  (i) EMC suing McKeever in December of 2009 with no basis and, then, when confronted with evidence showing that there was no basis for the lawsuit, continuing the lawsuit for several more months; and (ii) EMC dismissing the lawsuit without prejudice and stating that EMC would consider suing him again.

5.     These acts, and others, have had and will continue to have a chilling effect on Plaintiff McKeever, and EMC should not be permitted to use its extensive resources to harm the life of an individual while EMC, chafing from its failure to insist on longer non-compete agreements from the founders of Knowledgent, pursues its goal of preventing a smaller entity from lawfully competing with it.

## PARTIES

6.     Plaintiff McKeever is a citizen of Connecticut and resides in New Canaan, Connecticut.

7.     Upon information and belief, Defendant EMC is a Massachusetts corporation with its principal place of business in Hopkinton, Massachusetts, and usual place of business in Southborough, Massachusetts.

## JURISDICTION AND VENUE

8.     McKeever is an individual who is a citizen of the State of Connecticut. Upon information and belief, EMC is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business in Hopkinton,

Massachusetts, and usual place of business in Southborough, Massachusetts. Thus, there is complete diversity of citizenship between Plaintiff and EMC in this action. As is more fully shown below, more than $75,000, exclusive of interest and costs, is in dispute in this action. Therefore, this Court has jurisdiction of this dispute under the provisions of 28 U.S.C. § 1332.

9.     EMC is subject to personal jurisdiction in Massachusetts because, among other reasons, its principal place of business is located in Massachusetts, it has sufficient contacts with Massachusetts and has transacted business within Massachusetts, it has derived substantial benefit from its contacts with Massachusetts, and because some of EMC's unlawful actions occurred in Massachusetts.

## STATEMENT OF RELEVANT FACTS

10.     In 1999, Francis Casagrande ("Casagrande"), Emanuel Arturi ("Arturi"), and two others founded BusinessEdge Solutions, Inc. ("BusinessEdge"), a business and technology consulting company. BusinessEdge, which was based in East Brunswick, New Jersey, became a successful consulting firm.

11.     McKeever is the former Chief Financial Officer of BusinessEdge.

## EMC And BusinessEdge Merged In 2007

12.     In 2007, EMC acquired BusinessEdge by way of a merger (the "Merger") (EMC and BusinessEdge are collectively referred to herein as "EMC/BusinessEdge"). EMC/BusinessEdge operated from the former BusinessEdge offices in New Jersey, and, upon information and belief, continues to do so today under the name EMC Consulting.

13.    In connection with the Merger, Casagrande and Arturi agreed to be employed as special consultants to EMC for a four-month period ending on December 31, 2007. Simultaneously with the Merger, Casagrande and Arturi each entered into identical post-employment restrictive covenants that provided for an 18-month period of "non-competition" and "non-solicitation." EMC had, upon information and belief, originally wanted a three year period of "non-competition" from Messrs. Casagrande and Arturi, but in negotiations agreed to the shorter 18-month period.

14.    Casagrande and Arturi ended their special consulting assignments with EMC on December 31, 2007. Pursuant to their restrictive covenants they were prohibited from competing with EMC or soliciting EMC's employees or clients until June 2009.

15.    McKeever executed an employment-related agreement with EMC/BusinessEdge. Sections 1 and 5, respectively, of the "Key Employment Agreement" signed by McKeever provided for a 12-month post-employment period of "non-competition" with EMC and "non-solicitation" of EMC's clients and employees.

16.    In addition, Section 3 of the "Key Employee Agreement" signed by McKeever concerned the confidentiality of EMC/BusinessEdge materials, and provided:

> You agree that both during your employment with the Company and thereafter you will not use for your own benefit, divulge or disclose to anyone except to persons within the Company whose positions require them to know it, any information not already lawfully available to the public concerning the Company ("Confidential Information"). Confidential Information also includes, without limitation, any technical data, design, pattern, formula, computer program, source code, object code, algorithm, subroutine, manual, product specification, or plan for a new, revised or existing product; any business, marketing, financial, pricing or other sales-related data; information regarding the present or future business or products of the Company; any

4

information regarding employees including contact information, employee lists, organizational charts, information concerning particular employee skill sets, technical and business knowledge, and compensation; and any information concerning the particular needs of clients or customers and their buying patterns, price sensitivities, key decision makers (and the contact information for such individuals), product needs, production specifications, request for proposals and the responses thereto.

17.     McKeever is the former Senior Director of Finance at EMC/BusinessEdge until he resigned on or about October 23, 2009.

18.     Casagrande and Arturi have abided by their non-solicitation and non-compete agreements with EMC.

19.     McKeever has abided by his agreement with EMC.

20.     Nevertheless, McKeever as well as Casagrande and Arturi have been subject to wrongful threats initiated by EMC for the purpose of discouraging them from engaging in lawful competition with EMC.

### Casagrande And Arturi Formed Knowledgent
### And EMC Threatened Knowledgent

21.     In October 2009 -- after their restrictive covenants expired -- Casagrande and Arturi founded Knowledgent, a business and technology consulting company, with offices in New York and New Jersey.

22.     Shortly thereafter, on or about November 12, 2009, a former EMC employee, Shailendra Jain ("Jain"), received a telephone call from Thomas Roloff ("Roloff"), who was the head of the EMC Consulting division of EMC.  Roloff told Jain that he had heard rumors that Arturi, who had hired Jain at BusinessEdge, was starting a new company and was contacting many ex-BusinessEdge employees who were working for EMC.

23.     Roloff admitted during his telephone conversation with Jain that EMC had no legal recourse against Arturi because Arturi's non-competition and non-solicitation agreements with EMC had expired.  Nevertheless, Roloff was angry, and he told Jain that he did not believe that Arturi's actions were not morally justified.  Roloff threatened Jain that things could get "very ugly" if Arturi started a new company.

24.     Roloff concluded the November 12, 2009 telephone call by asking Jain to speak with Arturi to request that Arturi cease talking to any ex-BusinessEdge people employed by EMC.

### EMC Sued McKeever Without Basis In Law Or Fact

25.     On December 7, 2009, EMC sued McKeever in the Massachusetts Superior Court, Suffolk County, "on information and belief," alleging that McKeever had breached his "non-competition" and "non-solicitation" agreement with EMC because he was being employed by an entity "being established" by Arturi to compete with EMC (*i.e.*, Knowledgent).

26.     There was no factual basis for EMC's lawsuit against McKeever. McKeever was not employed by Knowledgent or anyone else.  In this regard, on December 11, 2009, as part of the aforementioned civil action, McKeever filed a sworn affidavit confirming those facts.  EMC never had any factual grounds to rebut McKeever's sworn affidavit.

27.     Nevertheless, EMC refused to dismiss that action for three (3) months, or until March 18, 2010.  Even then, EMC only dismissed the lawsuit "without prejudice," thereby leaving open the threat against McKeever of another lawsuit against him by EMC arising from

McKeever's conduct prior to the date of dismissal.  EMC informed McKeever that he may be sued again.

28.     McKeever suffered substantial monetary damages, including legal fees and expenses, in having to defend the baseless lawsuit filed by EMC.

**EMC Sued Knowledgent, Arturi, Casagrande, And Blotto In This Court**

29.     Two days before it dismissed the aforementioned lawsuit against McKeever, and as part of its continuing campaign to harm Knowledgent, EMC filed a lawsuit in the United States District Court for the District of Massachusetts (Civil Action No. 10-40055-FDS) against Knowledgent, Arturi, Casagrande, and Christopher J. Blotto ("Blotto") seeking temporary restraints, preliminary and permanent injunctions, and monetary damages.

30.     EMC has alleged, among other things, that Knowledgent, Arturi, Casagrande, and Blotto have failed to honor their contractual obligations to EMC, and have unlawfully competed with and used confidential information belonging to EMC.

31.     EMC has publically stated that it is prosecuting a lawsuit with Knowledgent, Arturi, Casagrande, and Blotto.

32.     In that lawsuit, EMC obtained a preliminary injunction against Blotto on September 8, 2010, preventing Blotto from soliciting or attempting to solicit one of EMC's current clients at any time before 12:01 a.m. Eastern time on December 5, 2010.  Upon information and belief, and in a further effort to destroy Knowledgent, EMC is using the fact of the lawsuit and the preliminary injunction in the marketplace in an effort to persuade current and potential clients of Knowledgent that Knowledgent has acted anti-competitively and illegally.

7

33.     McKeever is aware of EMC's lawsuit against Knowledgent, Arturi, Casagrande, and Blotto.

34.     Upon information and belief, many others have left EMC to join or form competing entities and have not been sued by EMC.

### Knowledgent Hired Plaintiff

35.     Plaintiff considered joining Knowledgent after his non-competition and non-solicitations agreement with EMC expired on October 23, 2010.  Instead, due to the threats and pending lawsuit, McKeever did not join Knowledgent for another month.

36.     The value of McKeever's job at Knowledgent exceeds $75,000.

37.     On November 22, 2010, Knowledgent hired McKeever.

### DECLARATION SOUGHT

38.     The Plaintiff, as part of this civil action, seeks two judicial declarations from this Court.

39.     In order to resolve this controversy, the Plaintiff requests that, pursuant to 28 U.S.C. § 2201, this Court declare the respective rights and duties of the parties in this matter and, in particular, that the Court declare that the twelve month periods of "non-competition" and "non-solicitation" contained in the employment agreement executed by McKeever has expired, and that Plaintiff has been lawfully and properly hired by Knowledgent.

40.     In addition, also in order to resolve this controversy, the Plaintiff requests that, pursuant to 28 U.S.C. § 2201, this Court declare the respective rights and duties of the

8

parties in this matter and, in particular, that the Court declare that certain of the confidentiality provisions contained in the employment agreement executed by McKeever go beyond what is necessary to protect legitimate confidential information and, therefore, to that extent should be deemed void as a matter of law.

### COUNT I
**(Declaratory Judgment Against EMC That Plaintiff
May Lawfully Be Employed By Knowledgent)**

41.     The Plaintiff repeat and reallege all of the allegations contained in the foregoing paragraphs as if fully set forth herein.

42.     Based on the preceding allegations, there exists between the parties a substantial case or controversy of sufficient immediacy and reality to warrant declaratory relief.

43.     The Plaintiff is informed and believes, and based on such information and belief allege, that EMC will likely take legal action given that the Plaintiff has become employed by Knowledgent.  However, the Plaintiff's non-competition agreement with EMC has expired, and there exists is no basis in law or fact for EMC to object to the Plaintiff becoming employed by Knowledgent.

44.     Accordingly, the Plaintiff respectfully requests that this Court render a declaratory judgment providing that the 12-month periods of "non-competition" and "non-solicitation" contained in the employment agreement executed by McKeever have expired, and that the Plaintiff may lawfully be employed by Knowledgent.

## COUNT II
### (Declaratory Judgment Against EMC To Reduce Scope Of Confidentiality Provisions In Plaintiff's Employment Agreement)

45.     The Plaintiff repeats and realleges all of the allegations contained in the foregoing paragraphs as if fully set forth herein.

46.     Based on the preceding allegations, there exists between the parties a substantial case or controversy of sufficient immediacy and reality to warrant declaratory relief.

47.     The Plaintiff, based upon EMC's prior threats and actions, is informed and believes, and based on such information and belief allege, that EMC may allege that Plaintiff violated the confidentiality provisions contained in his employment agreement.  However, the confidentiality provisions contained in the employment agreement executed by McKeever goes beyond what is necessary to protect legitimate confidential information and, therefore, should to that extent be deemed void as a matter of law.  EMC may, as it has with Arturi and Casagrande, seek to use the confidentiality provisions to, in effect, wrongfully extend the non-compete and non-solicitation provisions for a period without end, in violation of Massachusetts law.

48.     Accordingly, the Plaintiff respectfully requests that this Court render a declaratory judgment narrowing the scope of the confidentiality provisions contained in the employment agreement executed by McKeever to one that protects only against disclosure of legitimate and protectable confidential information.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays judgment against EMC as follows:

1.     For a declaration that the 12-month periods of "non-competition" and "non-solicitation" contained in the employment agreement executed by McKeever has expired, and that the Plaintiff has been lawfully and properly hired by Knowledgent.

10

2. For a declaration that certain of the confidentiality provisions contained in the employment agreement executed by McKeever goes beyond what is necessary to protect legitimate and protectable confidential information and, therefore, should be deemed void as a matter of law.

3. That EMC be permanently enjoined from threatening McKeever regarding his employment with Knowledgent.

4. That this Court award such other and further relief as it deems fit and proper.

PETER MCKEEVER

By his attorneys,


/s/ Joshua M. Davis
Joshua M. Davis (BBO No. 558852)
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART P.C.
One Boston Place, Suite 3220
Boston, MA  02108
(617) 994-5700

Of Counsel:
Joseph L. Buckley
Richard H. Epstein
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ  07102

Dated:  November 24, 2010


9478449.2 (OGLETREE)